UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO: 6:24-cr-100-CEM-DCI

UNITED STATES OF AMERICA

V.

DERICK PEREZ DIAZ

SENTENCING MEMORANDUM

The defendant DERICK PEREZ DIAZ by and through his undersigned counsel, hereby

files this Sentencing Memorandum in support of a reasonable sentence, which is sufficient, but

not greater than necessary to accomplish the goals of sentencing. As grounds therefore, the

defense would state the following:

**FACTUAL AND PROCEDURAL BACKGROUND:**

Mr. Perez Diaz has admitted to the factual basis in the plea agreement, and adopts those

facts herein. In summary, Mr. Perez Diaz was solicited by Mr. Vasquez to make purchases of

firearms from sources including Mr. Upton. Mr. Vasquez provided the funds and had to be

consulted prior to any purchases. Mr. Perez Diaz followed the instructions of Mr. Vasquez and

obtained a flat fee of a couple hundred dollars for each firearm that he purchased on behalf of

Mr. Vasquez. Mr. Upton was a licensed firearms dealer, and was repeatedly told by Mr. Perez

Diaz that he was not the actual purchaser of the firearms, but instead that it was Mr. Vasquez.

1

There were 93 firearms that qualified under Count I to which Mr. Perez Diaz entered his plea of guilty.

.

**CASE HISTORY**

Derick Yamir Perez Diaz was initially indicted along with his co-defendant Ernesto Vazquez on April 17, 2024.    Perez Diaz was indicted for:  Count I, Conspiracy to Traffic Firearms under 18 USC, sec. 933(a)(3); Counts II and II, Firearms Trafficking, under 18 USC 922(a)(1)(A) and 18 USC, sec. 933(a)(1); and Count IV, Dealing in Firearms without a License, under 18 USC, sec. 922(a)(1)(A).   On August 21, 2024 a Superseding Indictment was issued that addressed Mr. Perez Diaz, as well as his two co-defendants, Ernesto Vazquez and Matthew Stephen Easton.   In the Superseding Indictment Mr. Perez Diaz was charged with: Count I, Conspiracy to Traffic Firearms under 18 USC, sec. 932 (a) and sec, 933(a)(3); Count II and III, Firearms Trafficking in violation of 18 USC, sec. 922(a)(1)(A) and 18 USC, sec. (33(a)(1); and Count IV, Dealing in Fire Arms Without a License in violation of USC 18, se. 922(a)(10(A). Counts V through VII  did not apply to Mr. Perez Diaz.

Subject to a plea agreement with the U.S. Attorney,  Mr. Perez Diaz entered a plea of guilty to Count I of the Superseding Indictment on October 13, 2024 .    In exchange, the U.S. Attorney agreed to drop the remaining Counts of the Superseding Indictment, which consisted of Counts II, III and IV.

Under the plea agreement, the U.S. Attorney has agreed to recommend to the Court at sentencing a two-level downward adjustment for acceptance of responsibility, pursuant to

USSG, sec. 3E1.1(a)  and an additional one-level downward adjustment for acceptance of responsibility under USSG, sec. 3E1.1(b).

## HISTORY AND CHARACTERISTICS OF DEFENDANT

Mr. Perez Diaz is currently 22 years old; however, he was 21 at the time of the offenses. His life can be characterized by transitions between different family members, and back and forth between Puerto Rico; Fitchburg, MA and Orlando, FL.  His parents, Yamir Perez and Michelle Diaz were not married, and both had children from other relationships.  While he was born in Carolina, Puerto Rico, when he was in middle school he moved with his mother to Fitchburg, MA.  He resided with his mother in Fitchburg, MA until the Department of Children and Family Services removed him from his home, due to abuse from his mother's husband.  At that time his father was awarded custody, but he ended up residing with his paternal grandmother, Sonia Medina (an educator) and her husband Alfredo Parilla (a retired police officer), first in Carolina, Puerto Rico, and later in Orlando, FL.  He has maintained a close relationship with his grandmother Sonia Medina and her husband Alfredo Parilla, and regards Alfredo as his grandfather.  Months before his arrest he moved to an apartment with roommates in New Castle, Delaware.

Mr. Perez Diaz began school in Puerto Rico, but later attended the public schools in Fitchburg, MA.   Upon returning to Puerto Rico, he obtained a GED.  He has worked at unskilled jobs, such as in a warehouse and as cleaning staff for a janitorial company.  Most recently, he worked cleaning rental cars.

Mr. Perez-Diaz does not have any prior convictions.

The letters from his friends and family which are included in the accompanying appendix, document that Mr. Perez Diaz was widely regarded as a good kid, who was helpful to others.   His friends and family were astonished when they heard about his current situation before this Court, since it is so out of character for  him.  His grandparents, who have worked in law enforcement, were particularly astounded.

Mr. Perez Diaz has a lot of community and family support behind him, as is reflected in more than a dozen heartfelt and sincere letters supporting him.  The letters from both his paternal and maternal grandparents, his mother, and extended family reflect a youngster who has a long history of close family ties.   Other letters, such as that of Victor Ramirez and Rosa Ferra  who were pastors at the church Mr. Perez Diaz attended from his youth, reflect his sense of community involvement, and serving others in his community.  They saw him as a respectful youngster of good character, who was also anxious to learn and participate in church activities. The pastors of his church view him as a young man capable of mending the errors of his ways and redemption.  Overall, the numerous individuals who took the time to write letters supporting Mr. Perez Diaz, all indicate that they have known him for many years, and that he has a strong moral character.   His supporters indicate that this offense was a serious error in judgement by a young man, who otherwise has a history of trying to do the right thing.

**SENTENCING ISSUES**

United States v. Booker and 18 U.S.C. § 3553(a)

The decision of the United States Supreme Court in Booker has rendered the United States Sentencing Guidelines "effectively advisory." Booker, 543 US 220, 249-65. Pursuant to

Booker, sentencing courts are required to consider a defendant's Guideline range, but may "tailor the sentence in light of other statutory concerns as well." Id. at 265 (citing 18 U.S.C. § 3553 (a)). Cunningham v. California, 549 U.S. 270 (2007), Rita v. U.S., 551 U.S. 338 (2007), Gall v. U.S., 552 U.S. 38, 128 S. Ct. 586 (2007), and Kimbrough v. U.S., 552 U.S. 85, 128 S. Ct. 558 (2007) have made it clear district court judges are no longer bound by the guideline outcomes, and instead in determining what is an appropriate sentence in a particular case are to consult and consider the guidelines, then consider all of the factors found in 18 U.S.C. § 3553(a) to determine a reasonable sentence tailored to the specifics of the particular case at hand. See e.g., Kimbrough v. U.S., 128 S.Ct. 558, 570 (2007). The effect of Booker is that federal district courts must consider the seven factors set forth by § 3553 (a) in determining a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) [the applicable Sentencing Guidelines];

(5) any pertinent [Sentencing Guidelines] policy statement;

(6) the need to avoid unwarranted sentence disparities among defendants

with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victim of the offense.

Sentencing under § 3553 (a) requires the Court to start with the minimum sentence permissible

and add only so much additional punishment, if any, as necessary to comply with §3553(a)'s

purposes. As discussed below, application of the § 3553(a) factors to the facts of this case

indicate that a below guidelines would be appropriate.

Purpose of Sentencing

Section 3553(a)(2) lists four purposes of sentencing, which can be summarized as: (1)

just punishment; (2) deterrence; (3) protection of the public; and (4) rehabilitation. Under the

parsimony principal, the sentence in this case should be the minimum necessary to accomplish

the listed purposes. *See* 18 U.S.C. § 3553(a); *United States v. Lacy*, 99 F. Supp.2d 108, 119 (D.

Mass 2000).

Sentencing Applicable to Defendant:

While this is a serious case, it is important for the Court to consider the fact that if Mr.

Perez-Diaz had some vocational training that would have allowed him to enter a career path in

which he could have earned a respectable income, he would have been less susceptible when he

was approached by Ernesto Vasquez to be involved in this criminal activity.   In fashioning a

sentence, it would be important to both consider how the absence of vocational education

contributed to the problem, and to minimize the potential for recidivism by prioritizing

vocational education in any sentence given to Mr. Perez-Diaz.

The numerous letters from his friends and family also indicate that Mr. Perez Diaz is a

good candidate for rehabilitation, since the offenses were out of character for him.

<u>Avoiding Unwarranted Sentencing Disparities</u>:   While sentencing disparities classically

deal with ensuring the consistency of sentences, the defense would argue that this also must take

into consideration the degree of culpability of the defendant.  Sentence disparities need to

consider the factual basis of the offense, and who was the least culpable.   Mr. Perez Diaz was

the least culpable of the co-defendants, as such, the sentencing disparity between him and his co-

defendant's should reflect that he is less culpable than the co-defendants.  Mr. Perez Diaz did not

have any knowledge of the gun trading industry, until Ernesto Vasquez introduced it to him.

Both of his co-defendants were knowledgeable about gun trading; while Mr. Perez Diaz was

merely a youth cleaning cars for a rental company when he was approached.  It was Ernesto

Vasquez's money that was used to purchase the guns, and Mr. Perez-Diaz was merely given a

minimal flat fee for each firearm.  As such, Perez Diaz should receive less of a sentence than

either of his two co-defendants.

<u>Downward Departures Appropriate</u>:

<u>Youthful Age</u>

In the line of cases including <u>Roper v Simmons</u>, 543 U.S. 555 (2004), and <u>Graham v

Florida</u>, 560 U.S. 48 (2010) and their progeny, the US Supreme Court has recognized that the

male brain does not fully develop well into at least the middle twenties.  While this line of cases,

deals with even more serious offenses than that that committed by Mr. Perez Diaz, it is important to consider that this line of cases recognizes that young men are more likely to be rehabilitated than are older hardened criminals, and a sentence that does not sufficiently consider an offender's youth, maturity, and the need for an opportunity for rehabilitation can be offensive to the Eight Amendment restriction on cruel and unusual sentences. Graham, 560 US at 75-82.

Likewise the Sentencing Guidelines indicate the importance of considering age as a factor in determining the appropriateness of a downward departure. 5H1.1 of the Sentencing Guidelines specifically states:

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors my affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familiar relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals are also more amendable to rehabilitation.
> The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends  to decrease with age. Age-appropriate interventions and other predicting factors may promote desistance from crime. Accordingly, in an appropriate case, the court may consider whether a form of punishment other than imprisonment might be sufficient to meet the purposes of sentencing.

Mr. Perez Diaz should be allowed a downward departure for his age. He was only 21 at the time of the offenses. While his grandparents provided a loving environment for him, being moved about between Massachusetts, Puerto Rico and Orlando, and being bounced around from the custody of his mom, dad and grandparents would have some emotional ramifications.   The custody issue was exacerbated by the fact that he was shuffled between environments in which the predominant language was different, and this has to have a detrimental effect on his

8

schooling and adjustments to the different environments.   While he did obtain a GED he

struggled in school and was diagnosed with ADHD.  Unfortunately, he did not obtain a trade in

school and so despite having obtained his GED, his only employment options were minimum

wage jobs without advancement opportunities.  Therefore, Mr. Perez Diaz, was vulnerable to the

suggestions and influences of Mr. Vasquez.   As a young man, with no opportunities on the

horizon, and no criminal convictions on his record, he was the perfect young man to be lured into

Mr. Vasquez's criminal enterprise.


Minimal or Minor Participant:

        Whether a defendant is a minimal or minor participant is a fact-based determination left

to the deference of the District Court Judge.   U.S. v Rodriguez De Varon, 175 F.3d 930,

940(11th Cir. 1999)..  It is the defendant's conduct from which he has been determined to be

accountable at sentencing, and his "role as compared to that of other participants. . ."  De Varon,

We look to the "defendant's culpability in comparison to that of other participants in the relevant

conduct."  De Varon F.3d at 944.  Mr. Diaz should be allowed either a reduction in his level of 4

as a minimal participant, or at least a reduction of 2 levels as a minor participant under  3B1.2.

This is applicable to a defendant who, like Mr. Perez Diaz, was less culpable than the other

participants in the offense.

                Commentary 3B provides that this adjustment is determined base on the
        facts of the criminal activities.  Commentary 3A indicates that a person who
        performs only a limited function can receive an adjustment under this guideline,
        and uses the example of a drug trafficker who merely transported or stored the
        drugs.  Further the commentary 3C(ii -v) specify a non-exhaustive list of factors
        to consider:

(ii) The degree to which the defendant understood the scope and structure of the criminal activity

(ii)  the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)  the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)  the degree to which the defendant stood to benefit form the criminal activity;

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative.  Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the activity.

Here Mr. Perez Diaz was not the brains behind this criminal enterprise.   The United States admitted in the superseding indictment that once Mr. Perez Diaz purchased the guns, that he turned them over to Mr. Vasquez.    And further indicated in the superseding indictment that Mr. Vasquez provided Mr. Perez Diaz with the funds to purchase the guns and that he had to wait for Vasquez to give him the funds and the approval before he could make any purchases. .   Likewise in the factual basis of the plea, Perez Diaz admitted that he acted at the direction of Vasquez, using funds provided by Vasquez.  And after making the purchases from Easton and others, Perez Diaz would deliver the guns to Vasquez.  Mr. Perez Diaz only received a fee for each transaction.  Mr. Perez Diaz needed the authorization of Mr. Vasquez before he took any actions whatsoever.  And Mr. Perez Diaz was not the person who stood in the position of receiving the bulk of the profit from the criminal activities.   He was really like an order-boy working in the purchasing department of a corporation.  He had no authority to work on his own, and it was not his scheme.   He would have been less culpable

than the commentary example of someone who just transports drugs.   Here, Mr. Perez Diaz was just making the purchase at the direction and funding of Vasquez.  He was not involved in the larger scope of the operations.  Also, comparing Mr. Perez Diaz to Mr. Upton, we have a young man who cleans cars for a living, as opposed to Mr. Upton who has received specialized experience and training relating to the legality of firearms dealing in order to become a licensed businessman in the firearms industry.  Mr. Upton by contrast is a professional adult and therefore should be determined to be more responsible for his actions, that Mr. Perez Diaz.   Therefore, the defense argues that Mr. Perez Diaz is entitled to a decrease in his level by 4, but at least 2, levels.

Under Commentary 4, his lack of an understanding to the structure and activities of all others involved, would mean that he should have a 4 point reduction as a minimal participant.   It is unlikely that Mr. Perez Diaz would have had the business savvy to understand the full organizational structure and the roles of everyone else in the enterprise.  But if not, then it is still clear he is less culpable, and is at least entitled to a 2 level reduction under Commentary 5.

Mental and Emotional:

§5H1.3 indicates a downward departure for  Mental and Emotional Conditions:   While Mr. Perez Diaz's mental and emotional conditions are not debilitating, the defense asked the Court to consider the cumulative effect of the lack of stability, safety and security in his early life, along with his panic attacks and social anxiety.   His use of marijuana daily since he was about 16, also is indicative of an attempt to self-medicate.

<u>Criminal History Points and Offense Level</u>:

Probation has calculated Mr. Perez-Diaz's offense level as 32.   His criminal history points are 0.  This would indicate a sentencing range of 121 to 151 months.   However, a four level reduction offense level for playing a minimal role would be an offense level of 28, and result in a sentencing range of 78 to 97.    Should the Court determine that Mr. Perez Diaz played a minor role and apply a 2 level reduction, for an offense level of 30, the sentencing range would be 97 to 121 months.   The defense would argue that the relevant facts indicate that Mr. Diaz played only a minimal role ( 4 level reduction) and that the applicable sentencing range should therefore be 78 to 97 months.

<u>Sentence Not Greater Than Necessary for Goal of Sentencing</u>:

The Court should impose the minimum sentence necessary to accomplish the goals of sentencing.   <u>Lacy</u>.   Under section 3553(a)(2) the four purposes of sentencing are:  (1) just punishment; (2) deterrence; (3) protection of the public; and (4) rehabilitation.   The defense would argue that a below guidelines sentence would satisfy these goals, since, as the letters of support indicate, Mr. Perez Diaz is a young man capable of redemption and rehabilitation.  There is no reason to believe that the public would need to be protected from him. And there is no reason to believe that a below guidelines sentence would not be a sufficient deterrence.  Given his youth, an absence of a prior criminal record, and the fact that he played a lesser role in the offence, a just sentence could be satisfied with a below guidelines sentence.

<u>Special Requests Regarding Sentencing</u>:

The defense requests that Mr. Perez Diaz is given priority for programs that will allow him to develop skills and a trade while incarcerated, such as those in the Federal Prison Industries Programs (FPI or UNICOR), or the Occupational Educational Program.   Further, since Mr. Perez Diaz has a history of marijuana for a number of years, the defense requests that he receives priority in available Drug Abuse Education Programs.

Mr. Perez Diaz would be less likely to recidivate if he was to gain a trade while he was incarcerated.   The defense therefore requests that this Court direct that Mr. Perez Diaz is given priority to enter any available training programs, so that he may become a skilled worker.

Respectfully submitted.
Through counsel:

<u>*/s/ Dale Marie Merrill*</u>
Dale Marie Merrill, FL Bar #12604
Law Office of Dale Marie Merrill
P.O. Box 2139
Crystal River, FL 34423
Phone: 352-795-3327
Fax: 352-795-3324
Email: dalemariem@aol.com

*Certification of Service*

I HEREBY CERTIFY that a true and correct copy of this pleading has been electronically filed with the Clerk of Court (CMECF) on this 20th day of February 2025 by using the CMECF system which will send a notice of electronic filing to the following:  Assistant U.S. Attorney Noah Dorman at noah.dorman@usdoj.gov

*/s/ Dale Marie Merrill*
Dale Marie Merrill, FL Bar #12604
Law Office of Dale Marie Merrill
P.O. Box 2139
Crystal River, FL 34423
Phone: 352-795-3327
Fax: 352-795-3324
Email: dalemariem@aol.com

14