UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA**               No: 6:24-cr-100-CEM-DCI

    *Plaintiff,*

**v.**

**ERNESTO VAZQUEZ,**

    *Defendant.*

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Ernesto Vazquez, by counsel, respectfully submits this Sentencing Memorandum for consideration. Mr. Vazquez requests this Court impose a downward departure and variance pursuant to 18 U.S.C. § 3553.

**I.     PROCEDURAL HISTORY**

In August 2024, Mr. Vazquez was charged in three counts of a seven-count Superseding Indictment with one count of Conspiracy to Traffic Firearms and two counts of Firearms Trafficking. Doc. 60. He entered into a written plea agreement with the Government as to count one only, Conspiracy to Traffic Firearms, with an agreement that the remaining counts will be dismissed. Doc. 122. His plea of guilty was accepted and this Court scheduled sentencing for March 25, 2025. Doc. 131.

1

## II. THE SENTENCING GUIDELINES

Mr. Vazquez's base offense level is 20. PSR ¶ 54.[1] From the base offense level, Mr. Vazquez receives a six-level enhancement due to the offense involving 99 or less firearms. PSR ¶ 55. He receives a five-level enhancement for receiving firearms while having reason to know that the firearms would be used or disposed unlawfully. PSR ¶ 56. He receives a four-level enhancement for using or possessing firearms in connection with the offense of Dealing in Firearms Without a License. PSR ¶ 57. Mr. Vazquez receives a three-level reduction for Acceptance of Responsibility. PSR ¶¶ 63–64. Thus, the Final PSR will calculate Mr. Vazquez's Total Offense Level to be 34.

Mr. Vazquez is in Criminal History Category I because he has zero points for no prior juvenile or adult criminal history. PSR ¶ 67–68. Based upon the guideline range, Mr. Vazquez's guideline range of imprisonment is 121 to 151 months' incarceration. There is no statutory minimum term of imprisonment or supervised release. Because his offense is a Class C felony, the guideline range for supervised release is one-to-three years.

---

[1] References are to the Initial PSR. Doc. 158. As of the morning of March 16, 2025, the date of completion of this Memorandum, the Final PSR is not yet filed. The attorney below is out of the country from March 16–23, 2025.

2

## MEMORANDUM OF LAW

Mr. Ernesto Vazquez is a 23-year-old young adult. Prior to his arrest, he was employed as a material handler for Raymond Material Handling in Orlando. He has no children and has never been married but he is in a long-term, devoted relationship since 2019. Prior to his arrest, he lived in Kissimmee. His parents and only sibling, a younger brother, also live in Kissimmee.

Mr. Vazquez respectfully submits that the following analysis of USSG § 5H1.6, as well as the 18 U.S.C. §§ 3553(a)(1)–(7), (a)(2), and (a)(3) factors support his request for a downward departure and variance. He also submits that the advisory guideline sentence is greater than necessary to punish him, as an individual, for his offense conduct.

### IV.  *Booker* and its Progeny Provide this Court with Discretion to Impose a Downward Variance.

A district court's discretion is no longer limited by the guidelines since its matrix is merely advisory. *United States v. Booker,* 543 U.S. 220, 245-67 (2005). A court is unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States,* 552 U.S. 38, 53 (2007) (quoting *Koon v. United States,* 518 U.S. 81 (1996)). Thus, courts must impose a

3

punishment that "fit[s] the offender and not merely the crime." *Pepper v. United States, 476* U.S. at 487-88 (2011) (citation omitted). As this individualized assessment, the Sentencing Reform Act specifically provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

### V. An Examination of the 18 U.S.C. § 3553 Factors and Chapter 5 Departures Establishes that a Downward Variance and Downward Departure are Warranted

The following analysis of the guideline and § 3553 factors as they relate to Mr. Vazquez, as a unique individual, and his offense conduct, support his request for a downward variance and departure.

The significance of the first § 3553 factor is that Mr. Vazquez's offense must be considered in light of the factors leading up to it and must be considered in the context of his entire life. Mr. Vazquez respectfully submits that consideration of his conduct and history present important mitigating factors.

#### (a) The Nature and Circumstances of the Offense.

To begin, Mr. Vazquez recognizes the criminality of his offense. Mr. Vazquez was a youthful individual at the time of the offenses, only 22 years

4

old. His personal history reveals that he grew up facing challenges in life that many people are fortunate not to endure, including that in the part of Connecticut he grew up in, he saw people die due to street life. PSR 74. Additionally, he recalls that as a child there were periods, including at least one extended period, during which the electricity to their home was cut off in the winter season. *See, e.g.*, PSR 74. He grew up with a significant attachment to church, often attending church at least five times per week and ultimately becoming an evangelist himself.

Mr. Vazquez has always had a natural and learned affinity for vehicles and machinery. He has a long history of being generous with sharing his talents, helping family, neighbors, and others in need. He took pride in being involved in community work as an adult and young adult, often serving the needy. Before he graduated high school, he had applied to continue his education in a post-secondary institute that would enhance the immense talent for vehicles and machinery that he already possessed. Unfortunately, he had to make the choice to leave that institute prematurely to work for an income and care for his mother who had developed serious heart problems. His parents later moved to Florida, and Mr. Vazquez and his significant other followed.

After moving to Florida, while he and his girlfriend were still trying to find their grounding, Mr. Vazquez met "Individual 1," now identified as Ricardo Fermin Sune-Giron, who was in the country illegally, although he held himself out to be (and possessed ID of) someone else who was legally in the country to Mr. Vazquez. Individual 1 offered to help Mr. Vazquez and moved both Mr. Vazquez and his girlfriend into one of his properties that was under construction, so they would have housing that they critically needed. Individual 1 thereafter became the person that Mr. Vazquez procured numerous firearms (as noted in the Superseding Indictment and Factual Basis). *See e.g.*, PSR ¶¶ 20 ("Vazquez delivered the 12 firearms to Individual-1"), 32 ("Vazquez delivered the 40 firearms to Individual-1).

Mr. Vazquez then met his codefendant, Perez Diaz, through the website FloridaGunTrader.com, which has been available online (without subscription or cost) since 2007. On that website, individuals post firearms for sale and trade, which the website largely promotes as lawful. For instance, FloridaGunTrader.com, as of the filing of this motion, continues to state that:

> If it's legal for you to own a gun - generally, it is legal for you to sell it to another person as long as that person meets the following criteria:
>
> 1. The person is a citizen of Florida- You need a [sic] FFL dealer to buy and sell with citizens in other states or countries
> 2. The person is not a felon.
> 3. They are of legal age to own the type of firearm in question.

Florida Gun Trader, https://floridaguntrader.com/index.php?a=28&b=137 (accessed March 16, 2025). As another example, the site includes various photos with claims such as "No FFL Required!" – stating or implying to the public that a federal firearms license (FFL) is generally not needed if dealing with other individuals in Florida. One such example is below:



Florida Gun Trader, https://floridaguntrader.com/category/386/Services.html (accessed March 15, 2025). The website recommends creating Bills of Sale for transactions, which Mr. Vazquez did, and which paperwork was seized from his home as reported in the search return.

It was through taking the information on this widely used website for granted that the young and naïve Mr. Vazquez was recruited into this

conspiracy. An important distinction as to Vazquez's participation in the conspiracy is that, unlike his codefendant who admitted that he shipped firearms in various ways outside of the country on multiple occasions (resulting in various quick "time to crime" reports), Mr. Vazquez never participated in shipping any weapon out of the state or out of the country.

### (b) Characteristics of the Defendant

Outside of this offense, Mr. Vazquez lived a law-abiding, respectable life, in which he worked hard and took pride in helping others. On the date and time that he was arrested, he was headed to work. His personal history reflects no prior criminal history. Before Mr. Vazquez graduated high school in June 2019, he enrolled in further education into the "Automotive Technology" Program to study and enhance his skills at Lincoln Technical College in Connecticut, "America's Technical Institute." *See* Exhibit C.

Many of Mr. Vazquez's friends, colleagues, and loved ones submitted letters in support of Mr. Vazquez for this Honorable Court's review and consideration. Those letters are submitted as Composite Exhibit B, and touched briefly on here.

Mr. Vazquez's friend since middle school, Gabriel Florian, explains that he and Mr. Vazquez became close friends because they shared the hobby of working on cars. *Id.* He explains that Mr. Vazquez taught him things that he

did not know. *Id.* Because he knew Mr. Vazquez from childhood, Mr. Florian expresses knowledge and understanding that Mr. Vazquez suffered through many "hardships growing up," but that despite those obstacles, Mr. Vazquez always kept going. *Id.* He describes Mr. Vazquez as honest and responsible, and as someone who acts with integrity. *Id.*

Jose Claudio, one of the pastors who has known Mr. Vazquez for 15 years – which is since Mr. Vazquez was approximately 7 years old – describes Mr. Vazquez as "very helpful" and someone with good intentions. *Id.* Mr. Vazquez's grandmother writes to this Court and describes him as "hardworking" and always helping his family. *Id.* His aunt also writes that Mr. Vazquez is always helping others, never complaining, and generous. *Id.* Similarly, his neighbor of five years writes that Mr. Vazquez is always helping others, especially with their cars. *Id.* Another friend, Yomar Rivera, writes that Mr. Vazquez was "[s]omeone who would push you to be a better version of yourself and was always there if you needed anyone like a brother would." *Id.* Yet another friend describes Mr. Vazquez as caring and loyal and someone who lifts others up when they are going through a hard time. *Id.*

Mr. Vazquez's only sibling, his younger brother whom he loves incredibly much, writes that Mr. Vazquez was a protector and mentor to him as someone who "has always been the one to look out for me, to teach me

9

right from wrong and to push me to make better choices than he did." *Id*. Mr. Vazquez's girlfriend since 2019 describes his "genuine willingness to help others without hesitation" and explains that he "never denies anyone help if it is within his capacity to assist, showing his selflessness and commitment to those closest to him." *Id*.

Mr. Vazquez's father describes his son as a hard worker since age 15 years old. He discussed Mr. Vazquez's unique aptitude for missionary work and helping the disabled. He explains that Mr. Vazquez is genuinely and sincerely remorseful for his participation in this offense. *Id*. Mr. Vazquez's other grandmother writes to explain that "[i]n school, he was an excellent boy of good values, or good behavior, and of humble respect" and tellingly, that he was someone who "never said no." *Id*.

Mr. Vazquez's mother explains that her son grew up doing great in school, someone who since he was a young child remained devoted to the church and became an evangelist. *Id*. But she also explains that between graduating high school and the arrest in this case, Mr. Vazquez suffered a terribly tragic car accident, after which nothing was ever the same for him. *Id*. In the accident she references, Mr. Vazquez was the driver of a car that fell off a road and tumbled down a cliff or mountain. Photos from the accident show the severe damage to the car, complete with embedded plant-life visible

10

in the car, and Mr. Vazquez's recovery in the hospital. *See* Composite Exhibit A. Mr. Vazquez's mother explains that following the tragic accident:

> [Mr. Vazquez's] life took a drastic turn after a car accident that left him with significant challenges. He suffered memory loss, periods of confusion, and difficulty retaining information. Over time, he developed trauma, anxiety and depression. Unfortunately, due to a lack of awareness, he never sought proper treatment for his condition. The accident changed his life in ways that neither he nor our family could have anticipated.

*See* Exhibit B (letters). Mr. Vazquez still has the scars on his head that resulted from that accident to this day, and he still suffers pain all over his body. PSR ¶ 77. In her letter, his mother further details that she suffers from a serious heart condition, and that Mr. Vazquez "has been a constant source of strength for me, particularly during my long struggle with a heart condition. During periods of my illness, when his father was occupied with work, he was my primary caregiver and great help with managing my medications." *See* Exhibit B (letters).

      Review of the letters and photos shows that Mr. Vazquez lived a hard life, but that prior to his accident, which may have caused a traumatic brain injury given his change in behavior afterwards, he was a loving, devoted, generous, helpful friend, son, brother, neighbor, and significant other. The letters submitted to this Court are replete with references to his core character as someone selfless dedicated to church, education, and helping

11

those within his communities despite his own modest means. The criminal conduct in which Mr. Vazquez took part is a true aberration of his lifelong character. Accordingly, Mr. Vazquez respectfully submits that this dichotomy be a factor this Court considers, in conjunction with others, to consider a downward variance under § 3553.

**(c)** **<u>Youthful Age</u>**

The Sentencing Guidelines were recently amended to include a policy of critical import here, that is:

> Age may be relevant in determining whether a departure is warranted.
>
> \* \* \*
>
> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. **<u>In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.</u>**
>
> The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age. **<u>Age-appropriate interventions and other protective factors may promote desistance from crime.</u>**

USSG § 5H1.1 (emphasis added). Mr. Vazquez is exactly the type of

individual that this downward departure was intended for, and he respectfully requests that the Court grant a downward departure on this basis.

### (d)  USSG § 5K2.1(b)(9) Motivation, Vulnerability, and Fear

The Sentencing Guidelines state that:

(9) If the defendant—

(A) receives an enhancement under subsection (b)(5);

(B) does not have more than 1 criminal history point, as determined under §4A1.1 (Criminal History Category) and §4A1.2 (Definitions and Instructions for Computing Criminal History), read together, before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category); and

(C) (i) was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense; or (ii) was unusually vulnerable to being persuaded or induced to commit the offense due to a physical or mental condition;

decrease by **2** levels.

USSG 2K2.1(b)(9). Mr. Vazquez respectfully submits that he is also entitled to the two-level reduction under this section of the guideline. Mr. Vazquez received an enhancement under subsection (b)(5) satisfying subsection A. He also has zero criminal history points, although he appears ineligible for the two-level reduction for Zero-Point Offender because the offense inherently entailed firearms, satisfying subsection B. And finally, Mr. Vazquez's

participation in this offense, being led by a far more sophisticated adult, was motivated by an intimate and familial relationship, as well as fear, and given his youthful age, he was "unusually vulnerable to being persuaded or induced to commit the offense due to a physical or mental condition." The Sentencing Commission itself holds as a policy that: "In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood." USSG § 5H1.1; *see also Graham v. Florida*, 560 U.S. 48 (2010) (finding that youthful individuals have diminished culpability due to their still-developing brains, immaturity, vulnerability, and potential for rehabilitation). For these reasons, Mr. Vazquez should also receive the two-level reduction under § 5K2.1(b)(9).

(e) <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.</u>

Mr. Vazquez acknowledges and appreciates that this is a serious offense. Punishment, in some fashion, is needed to promote respect for the law. The question is what precisely qualifies as just punishment for his offense. As previously stated herein, Mr. Vazquez's involvement in this offense was limited, he was a young adult, and he suffered misimpressions from a public website that's been online for more than 20 years. He did not ship the firearms. As detailed above and in the exhibits, there are many

14

mitigating factors for this Court to consider in determining a downward variance and departure.

The principle of general deterrence is based on the premise that incarceration deters crime. This error has resulted in the mass incarceration of individuals in the United States. *See* Dr. Oliver Roeder et al., *What Cause the Crime Decline?,* Brennan Ctr. For Justice, 22-23 (Feb. 12, 2015). The condition of mass incarceration is especially troubling since there is no correlation between punishment and reductions in crime. *See id.* The United States Department of Justice agrees with the conclusion that incarcerating defendants is not an effective means of deterrence. *See* U.S. Dept. of Justice, Nat'l Inst. Of Justice, *Five Things About Deterrence* (July 2014). In fact, the Department of Justice finds that even increasing the severity of punishment does little to deter punishment. Thus, although Mr. Vazquez falls within a Zone D, deterrence should be only one factor of many in determining whether that punishment is sufficient but not greater than necessary for Mr. Vazquez.

(f) <u>To protect the public from further crimes of the Defendant.</u>

Simply put, Mr. Vazquez is exceedingly unlikely to reoffend. He is youthful, accepts responsibility, is more amenable to rehabilitation than his non-youthful co-conspirators, and the conviction in this case will cause him to lose his rights to own or possess firearms. He is still only 23 years old and has

15

never been incarcerated (aside from his arrest in this case). It is respectfully submitted that a lengthy term of imprisonment will not positively impact his recidivism.

Mr. Vazquez's brain is still physiologically developing. This incarceration has been a traumatic experience for him and his family, as he has never previously been incarcerated. He worries constantly about his mother's health, and his brother's future, both of whom he cares for immensely (along with others). He has expressed to the undersigned and to his family that is dedicated to not returning to unlawful activity. It is respectfully submitted that Mr. Vazquez presents a significantly low risk of re-offending.

> (g) <u>To provide the defendant with the necessary educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>.

Mr. Vazquez is also amenable to any counseling or treatment. PSR ¶ 79. He has no history of violence, and he does not drink or use drugs. PSR ¶ 80. It is respectfully submitted that considering all the factors, a far lesser imprisonment sentence than the Guidelines suggest would sufficiently punish Mr. Vazquez and be more likely to ensure his rehabilitation and desistance from future offenses, as the Sentencing Commission's itself expresses in § 5H1.1 ("Age-appropriate interventions and other protective

factors may promote desistance from crime").

Thus, under § 3553(a)(3) – the kinds of sentences available – there exist much lesser or alternative sentences that would satisfy any concerns in the most effective manner while providing a punishment that is sufficient, but not greater than necessary.

## CONCLUSION

For the foregoing reasons, and those that will be explored at the sentencing hearing, Mr. Vazquez respectfully submits that his unique circumstances demonstrate that there exist multiple appropriate bases, supported by the evidence, for a downward departure and variance from the applicable guidelines range. Finally, Mr. Vazquez feels genuine remorse for his involvement in the offense and he respectfully asks this Honorable Court, considering all the factors under section 3553(a) and Chapter 5, to give him the opportunity to serve a sentence that is less than the sentencing guideline range, considering his personal and offense characteristics as detailed above.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 19, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the United States Attorney's Office, 400 West Washington Street, Suite 3100, Orlando, FL 32801.

*/s/ Michelle R. Yard*
**Michelle R. Yard, BCS**
Florida Bar Number: 14085
Joshi Law Firm, P.A.
5750 Major Blvd., Ste. 530
Orlando, FL 32819
Office: (407) 661-1109
Email: michelle@joshi.law
Counsel for Ernesto Vazquez
